IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SUSAN CASSIDY, AS NEXT FRIEND OF ERNEST CASSIDY;<br>*Plaintiff*<br><br>-vs-<br><br>SAN ANTONIO GREENBAY, L.C., UNITED STATES OF AMERICA,<br>*Defendants* | §§§§§§§§§§§ | SA-22-CV-00652-XR |

## ORDER ON MOTION TO DISMISS

On this date, the Court considered Defendant United States of America's motion to dismiss this action for lack of subject matter jurisdiction under Rule 12(b)(1) (ECF No. 29), Plaintiff's response (ECF No. 31), and Defendant's reply (ECF No. 32). After careful consideration, the Court issues the following order.

## BACKGROUND

On July 20, 2021, Ernest Cassidy was leaving the Veteran Affairs ("VA") Clinic located at 8410 Datapoint Drive in San Antonio, Texas (the "Premises"), when a set of automatic doors closed on him and his walker, causing Mr. Cassidy to fall. *See* ECF No. 25. Plaintiff Susan Cassidy, as next friend of Ernest Cassidy, alleges claims for premises liability and negligence against the United States (the "Government") and San Antonio Greenbay, L.C. ("Greenbay"), the owner of the Premises.

Plaintiff's claims against the Government arise under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671 *et seq.*, while her claims against Greenbay arise under Texas common law. Plaintiff asserts that both Defendants were negligent because, "as occupiers and/or owners of the premises, with control over the premises, [they] had a duty to inform Plaintiff of the dangerous

condition and make the defective condition existing on Defendant's premises safe." *Id.* at 3. Plaintiff further alleges that Defendants were negligent in failing to maintain the Premises, including the doors, floor, and walkway in a reasonably safe condition; failing to inspect the premises; failing to inform Mr. Cassidy, as an invitee, of the allegedly dangerous condition; and "[o]ther acts deemed negligent." *Id.* at 2–3.

The VA leases the Premises from Greenbay pursuant to an agreement signed in November 2020 and effective in May 2021 (the "Lease"), for a period of five to ten years. ECF No. 29-1 at 1.[1] The Lease imposes numerous contractual obligations on Greenbay, as the Lessor, to maintain the Premises in a safe and useable condition. The Lease generally provides that Greenbay "is responsible for the total maintenance and repair of the leased Premises, including the site and private access roads," *id.* § 6.09, along with maintenance of "the building, building systems, and all equipment, fixtures, and appurtenances furnished by the Lessor . . . in good repair and tenantable condition." *Id.* § 2.16; *see also id.* § 3.24 (requiring the Lessor to "provide and operate all Building equipment and systems in accordance with applicable technical publications, manuals, and standard procedures"); *id.* § 2.16 (requiring the Lessor to "maintain the Premises in a safe and healthful condition according to applicable OSHA standards"). Greenbay must also provide "initial supply and replacement of all supplies, materials, and equipment necessary for such maintenance." *Id.* § 6.09. The Lease further provides that Greenbay must retain an onsite building superintendent or local representative to address all deficiencies. *Id.* § 6.12. "[F]or the purpose of determining [Greenbay]'s compliance" with its contractual maintenance obligations, the Lease

---

[1] The Court previously required Plaintiff to file an amended complaint to correct Greenbay's name based on Greenbay's representation that it had been incorrectly named as "San Antonio Greenbay, LLC" in Plaintiff's original complaint. *See* ECF No. 24 at 2; *see also* ECF No. 14 (San Antonio Greenbay, L.C.'s Answer). Curiously, the Government's motion identifies the lessor as "SA Greenbay, Inc." and the copy of the Lease attached to the motion identifies the lessor as "San Antonio Greenbay, LLC" as the lessor. *See* ECF No. 29 at 4; ECF No. 29-1 at 1.

2

grants the Government the right "to inspect all areas of the Property to which access is necessary." *Id.*, General Clauses, § 12.

The Government moves to dismiss Plaintiff's FTCA claims for lack of subject matter jurisdiction, arguing that the United States has not waived its sovereign immunity with respect to Plaintiff's claims. ECF No. 29. Under the doctrine of sovereign immunity, the federal government cannot be sued in its capacity as a sovereign unless it consents to be sued. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). For the federal government to consent to be sued, Congress must waive sovereign immunity by explicitly extending to federal courts subject-matter jurisdiction over a specified cause of action. *Id.* The FTCA waives sovereign immunity and allows private individuals to sue the federal government for the torts of its employees by granting federal courts exclusive subject-matter jurisdiction over:

> civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). However, the FTCA precludes recovery for punitive damages and contains a number of exceptions to this waiver of sovereign immunity, including the independent contractor exception at issue here. *See* 28 U.S.C. §§ 2674; 2680.

## DISCUSSION

**I.    Legal Standard**

The Government moves to dismiss this case for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure Rule 12(b)(1). Dismissal is proper under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Typically, in determining

whether subject-matter jurisdiction exists, "[c]ourts must strictly construe all waivers of the federal government's sovereign immunity, [resolving] all ambiguities in favor of the sovereign." *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998). However, the Supreme Court has cautioned that "this principle is 'unhelpful' in the FTCA context, where 'unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute.'" *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 491–92 (2006) (quoting *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984)) (citations omitted). Thus, "the proper objective of a court attempting to construe one of the [exceptions to the FTCA's sweeping waiver of immunity] is to identify 'those circumstances which are within the words and reason of the exception'—no less and no more." *Id.*

In ruling on a motion under Rule 12(b)(1), the Court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *United States v. Freeman*, 556 F.3d 326, 334 (5th Cir. 2009). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). In short, no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* at 413. Further, materials such as affidavits and regulations can be considered when relevant to the issue of jurisdiction. *Poindexter v. United States*, 777 F.2d 231 (5th Cir. 1985).

While the plaintiff bears the burden of showing an unequivocal waiver of sovereign immunity, it remains an open question which party retains the ultimate burden of proof on the

4

applicability of the discretionary function exception. *St. Tammany Parish v. FEMA*, 556 F.3d 307, 315 n.3 (5th Cir. 2009). Regardless of which party bears the ultimate burden of proof, at the pleading stage, the plaintiff must allege a claim that is facially outside the exception. *Id.* At the summary judgment stage, the plaintiff must submit evidence that the claim is facially outside the exception. *Morales v. United States*, 371 F. App'x 528, 532 (5th Cir. 2010).

**II.   Analysis**

The FTCA waives immunity for claims based on the negligent or wrongful act or omission of any employee of the Government, while acting within the scope of his or her employment, under circumstances where the United States, if a private person, would be liable under state law. 28 U.S.C. § 1346(b). The FTCA's definition of "employee of the government" includes "officers or employees of any federal agency" and the term "federal agency" excludes "any contractor with the United States." 28 U.S.C. § 2671. Thus, the United States is not generally liable for the torts of government contractors or their employees. *Alexander v. United States*, 605 F.2d 828, 833 (5th Cir. 1979). Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver. *See Dalehite v. United States*, 346 U.S. 15, 30–31 (1953).

In determining whether the independent contractor exception applies, the question is not whether the contracting agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government. *Orleans v. United States*, 425 U.S. 807, 815 (1976); *Logue v. United States*, 412 U.S. 521, 526 (1973) (noting that the distinction between servant and agent relationship turns on authority of principal to control the physical conduct of the contractor in performance of the contract). The

Fifth Circuit has referred to the guiding test as the "daily-detailed-control" test. *Cavazos v. United States*, 776 F.2d 1263, 1264 (5th Cir. 1985).

Here, there is no evidence that, in administering the Lease, the VA controlled Greenbay's daily detailed performance of its maintenance obligations such that Greenbay or its employees should be treated as government employees. The Lease explicitly provides that Greenbay was responsible "for the total maintenance and repair of the leased Premises," *id.* § 6.09, including "the building, building systems, and all equipment, fixtures, and appurtenances furnished by the Lessor," *id.* § 2.16, and for providing the personnel, *id.*, and "initial supply and replacement of all supplies, materials, and equipment necessary [to perform] such maintenance," *id.* § 6.09.[2] While the Lease does contemplate Government inspections to confirm that Greenbay has performed its maintenance obligations, *see* ECF No. 29-1, General Clauses, § 12, "[a] retained right of inspection does not defeat the independent contractor exception unless the government actually supervises the contractor's day-to-day activities." *Guile v. United States*, 422 F.3d 221, 229 n.10 (5th Cir. 2005); *see also Battaglia v. United States*, 495 F. App'x 440, 441–42 (5th Cir. 2012) (government authority to monitor compliance does not itself create liability for the United States) (citing *Alexander* v. *United States*, 605 F.2d 828, 833 (5th Cir. 1979)); *Reyes Colon*, 2019 WL 165578, at *2 ("That the contract required [the HCR Supplier] to abide by certain standards in its hiring and vehicle maintenance or submit to inspections did not transform it into a federal agency. . . . This level of oversight [does not] reach the level of day-to-day control and supervision that is required to demonstrate for FTCA purposes that a contractor is an employee."). Thus, the

---

[2] The Government also points out that, under Texas law, Greenbay, as a landlord in a commercial lease, made an implied warranty that the Premises were suitable for their intended commercial purpose. Thus, at inception of the lease, Greenbay made an implied warranty that there were no latent defects in the facilities that were vital to the intended use of Premises and that those essential facilities would remain in suitable condition. *Davidow v. Inwood N. Prof. Grp.—Phase 1*, 747 S.W. 2d 373, 377 (Tex. 1988).

6

Government argues that it cannot be liable for Mr. Cassidy's injuries because the Lease clearly contemplates that the Lessor would fulfill the contract independently and without VA supervision.

Plaintiff does not deny that the relationship between Greenbay and the VA is governed by the Lease. Instead, Plaintiff asks the Court to permit discovery as to "the jurisdictional facts at issue, including the extent of the lessor/lessee's right of control under the lease agreement, the extent to which each of them may or may not have exercised *actual* control over subject premises, and the extent to which the [Government] may have supervised the lessor's work." ECF No. 31 at 11 (emphasis in original). "To extent that the lease agreement can be construed as shifting some degree of control over the condition at issue from the United States to [Greenbay]," Plaintiff argues, "the exact division of responsibility/control established by the [Lease] is, at best, uncertain and ambiguous[.]" *Id.*

As the party opposing dismissal and requesting discovery, Plaintiff bears the burden of demonstrating the necessity of discovery. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (citing *Davila v. United States*, 713 F.3d 248, 263–64 (5th Cir. 2013)). A plaintiff is not entitled to jurisdictional discovery when "the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009). Plaintiff must offer more than "vague assertions that discovery will produce needed, but unspecified facts" to convince the Court that the discovery will be likely to produce sufficient facts to overcome the Government's assertion of sovereign immunity. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 423 (5th Cir. 2016). "Sovereign immunity is an immunity from suit, not merely immunity from liability." *Estate of Anderson-Coughlin v. United States*, No. 3:16-cv-01492 (JAM), 2017 WL 6624020, *4 (Dec. 28, 2017).

7

Plaintiff insists that "the exact division of responsibility/control established by the [Lease] is, at best, uncertain and ambiguous[.]" ECF No. 31 at 11. Plaintiff correctly asserts that "the complaint does allege that Defendant United States had control over the subject premises such that it retained a duty to warn or make safe a dangerous conditions of which it had actual or constructive knowledge." *Id.* at 11. As previously discussed, however, in the context of a factual attack on a court's subject matter jurisdiction, no presumptive truthfulness attaches to a plaintiff's allegations and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson*, 645 F.2d at 413. Moreover, a plaintiff's burden of demonstrating the need for jurisdictional discovery is higher where, as here, "the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery." *Freeman*, 556 F.3d at 342.

The Court cannot justify imposing the burdens of discovery *on the Government* based on Plaintiff's vague assertion that the Lease is "uncertain and ambiguous." ECF No. 31 at 11; *see Arbuthnot v. United States*, No. 17-1667-JWD-RLB, 2018 WL 6528461, at *2 (M.D. La. Dec. 12, 2018) (denying request for jurisdictional discovery where the plaintiff "argue[d] that regardless of the express terms of the [] contract, the Postal Service *may have treated* [the drivers] as employees such that it would be liable for [the] purported negligence" (emphasis added)); *cf. Walding v. United States*, No. SA–08–CA–124–XR, 2009 WL 902423, at *14 (W.D. Tex. March 31, 2009) (permitting jurisdictional discovery where the plaintiffs had "submitted specific discovery requests that would produce evidence relating to the applicability of the independent contractor exception"

to their claims of physical and sexual abuse and denial of medical care at a government detention facility).[3]

Still, the Court acknowledges that, depending on how the accident occurred, the Government may have owed Mr. Cassidy additional duties under Texas common law based on its control of the Premises. In Texas, a person put in control of a premises by the owner is under the same duty as the owner to keep the premises under his control in safe condition. *Smith v. Henger*, 148 Tex. 456, 226 S.W.2d 425, 431 (1950). Moreover, the Supreme Court of Texas has clarified that "we have never required exclusive control in the premises liability context. We have merely required 'sufficient control over the part of the premises that presented the alleged danger so that

---

[3] The Court further observes that, to the extent that Plaintiff's claims are premised on the Government's alleged duty to supervise Greenbay's performance under the Lease and duty to warn invitees about the door's known but latent defects, they face another jurisdictional hurdle under the FTCA: the discretionary function exception.

The discretionary function exception provides that the Government's waiver of sovereign immunity under the FTCA does not extend to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

To determine whether the exception applies, a court must first ask whether the challenged actions were discretionary, or whether they were instead controlled by mandatory statutes or regulations—in other words, whether the conduct is a "matter of choice for the acting employee." *St. Tammany Parish v. FEMA*, 556 F.3d 307, 323 (5th Cir. 2009) (citing *Berkovitz v. United States*, 486 U.S. 531 (1988)). If the conduct involves such discretion, the court must determine whether it is the kind of judgment that the discretionary function exception was designed to shield. *Id.* The exception was designed to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy and thus protects only governmental actions and decisions based on considerations of public policy. *Id.* at 323–24. At the pleading stage, a plaintiff must allege a claim that is facially outside the exception. *Id.* at 315 n.3.

With respect to the first question, Plaintiff has not identified any controlling statute, regulation, or policy governing the supervision of Greenbay's maintenance duties or the Government's duties to warn invitees about latent defects in the Premises. Moreover, courts have found that such duties involve the kind of judgment the discretionary function exception was intended to protect. "Supervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function." *Guile v. United States*, 422 F.3d 221, 230 (5th Cir. 2005). Several circuits have likewise concluded that the Government's decision whether to post warning signs can fall within the purview of the discretionary function exception. *See, e.g., Kiehn v. United States,* 984 F.2d 1100, 1103 (10th Cir. 1993) (stating in a failure to warn claim that "[t]he decision whether or not to post warning signs . . . is clearly discretionary as it 'involves an element of judgment or choice.' "); *see also Lesoeur,* 21 F.3d at 969–70 (rejecting plaintiff's contention in a failure to warn context that the failure of the United States to post warning signs did not fall outside the scope of the discretionary function exception); *Williams v. United States*, 50 F.3d 299, 310 (4th Cir. 1995) ("With respect to posting ["wet floor"] warning signs in this specific case, the courts recognize that this falls within the purview of the discretionary function exception.").

9

the defendant has the responsibility to remedy it.'" *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 479 (Tex. 2017) (quoting *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002)); *cf. Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993) ("[T]he court's inquiry must focus on who had specific control over the safety and security of the premises, rather than the more general right of control over operations. . . . If [the defendant] did not have any right to control the security of the station, it cannot have had any duty to provide the same.").

As Plaintiff points out, "none of [the maintenance] provisions constitute a general assignment of control over the premises or the dangerous condition at issue and none of these provisions relieves the Government of the duty it owes generally to invitees, as occupant of the leased premises with control over the premises, to warn or make safe unreasonably dangerous condition of which it has actual or constructive knowledge." ECF No. 31 at 8. Thus, Plaintiff argues that:

> [Greenbay]'s duty to maintain the premises in [tenantable] condition [and] to maintain the automatic doors "in good repair" does not deprive the United States of control over the premises or the dangerous condition at issue and would not relieve the United States of its duty to warn or make safe a known danger posed by the automatic doors which it might properly discharge by means other than repair/maintenance, e.g. posting a warning sign.

*Id.* at 9. After all, it is not clear at this stage whether the Government was aware that the door was malfunctioning before Mr. Cassidy was injured or, indeed, "what exactly led to the malfunctioning of the automatic door, e.g. whether it was the failure of the internal component of the automatic door or some external cause squarely within the control of the United States (such as [a] physical obstruction in the walkway)[.]" *Id.* at 10. Thus, even assuming that the Lease conferred upon Greenbay the "exclusive" duty to maintain the Premises in good *repair*, Plantiff argues that the Government would still owe a duty to invitees "to warn about or make safe a known danger posed by the automatic doors" by, for example, installing a warning sign, removing a physical obstruction

10

within its control, timely reporting the issue to Greenbay for repair, or shutting off the doors automatic function entirely. *Id.*

The Court agrees that discovery into the mechanism of Mr. Cassidy's injury is warranted and that such discovery may produce evidence bearing on the Government's immunity in this case. Plaintiff need not burden the Government with such requests at this time, however, since discovery against Greenbay is likely to produce evidence of causation. Such discovery will likely address, among other things:

(1) whether the automatic door that injured Mr. Cassidy were used by the VA exclusively or shared by multiple tenants;
(2) whether Greenbay was aware of a pre-existing defect or obstruction causing (or likely to cause) an automatic door malfunction when the accident occurred and, if so, how and when it learned of such defect/obstruction;
(3) whether Greenbay, the Government, or any third-party to the litigation posted a warning near the relevant entrance (and the contents of any such warning);
(4) how, when, and from whom Greenbay learned about Mr. Cassidy's accident;
(5) communications between Greenbay and the VA concerning access to the relevant entrance, Mr. Cassidy's accident;
(6) the results of any investigation of Mr. Cassidy's accident, performed by or provided to Greenbay;
(7) the nature and status of any repairs/maintenance performed in the days/weeks before and after Mr. Cassidy's accident; and
(8) the production of video footage of the incident, if any.

Permitting Plaintiff to proceed with limited discovery against Greenbay does not prejudice either Defendant. The Court is not imposing any discovery obligations on the Government, but merely extending the stay of proceedings against the Government on a temporary basis. For its part, Greenbay is almost certain to face discovery on these topics regardless of the Government's presence in this case, albeit perhaps in a different forum.[4]

---

[4] Had the Court dismissed Plaintiff's claims against the Government, it likely would have declined to exercise supplemental jurisdiction over the state-law claims against Greenbay. 28 U.S.C. § 1367(c)(3). Still, nothing would

## CONCLUSION

For the reasons stated herein, the Government's motion to dismiss (ECF No. 29) is **DENIED** without prejudice to re-urging after Plaintiff has had an opportunity to (1) serve discovery requests on Greenbay as to how Mr. Cassidy's accident occurred, and (2) file a supplement to the complaint identifying her theory of the Government's liability in this case based on the information produced in discovery. This case remains **STAYED** as to the United States.

Plaintiff shall file her supplement to the complaint **by April 29, 2024**, or seek an extension of time to do so. **Failure to file such supplement will result in dismissal of Plaintiff's claims against the United States without prejudice without further notice.**

It is so **ORDERED**.

**SIGNED** this 30th day of January, 2024.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

prevent Plaintiff from pursuing her claims against Greenbay in state court. *See Artis v. District of Columbia*, 138 S. Ct. 594 (2018) (holding that § 1367(d) tolls the statute of limitation on state-law claims during the pendency of a federal action in which the court dismissed all federal claims and decline to exercise supplemental jurisdiction over the state-law claims).