IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SUSAN CASSIDY, AS NEXT FRIEND OF ERNEST CASSIDY,<br>*Plaintiff*<br><br>-vs-<br><br>SAN ANTONIO GREENBAY, L.C., AND UNITED STATES OF AMERICA,<br>*Defendants* | § § § § § § § § § § § | SA-22-CV-00652-XR |

### ORDER ON SECOND MOTION TO DISMISS

On this date, the Court considered Defendant United States of America's motion to dismiss this action for lack of subject matter jurisdiction under Rule 12(b)(1) (ECF No. 44), Plaintiff's response (ECF No. 47), and Defendant's reply (ECF No. 50). After careful consideration, the Court **GRANTS** the motion.

### BACKGROUND

**I.   Factual Background**

On July 20, 2021, Ernest Cassidy was leaving the Veteran Affairs ("VA") Clinic located at 8410 Datapoint Drive in San Antonio, Texas (the "Premises"), when a set of automatic doors closed on him and his walker, causing Mr. Cassidy to fall. *See* ECF No. 25. Plaintiff Susan Cassidy, as next friend of Ernest Cassidy, alleges claims for premises liability and negligence against the United States (the "Government") and San Antonio Greenbay, L.C. ("Greenbay"), the owner of the Premises.

Plaintiff's claims against the Government arise under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671 *et seq.*, while her claims against Greenbay arise under Texas common law. Plaintiff asserts that both Defendants were negligent because, "as occupiers and/or owners of

the premises, with control over the premises, [they] had a duty to inform Plaintiff of the dangerous condition and make the defective condition existing on Defendant's premises safe." *Id.* at 3. Plaintiff further alleges that Defendants were negligent in failing to maintain the Premises, including the doors, floor, and walkway in a reasonably safe condition; failing to inspect the premises; failing to inform Mr. Cassidy, as an invitee, of the allegedly dangerous condition; and "[o]ther acts deemed negligent." *Id.* at 2–3.

The VA leases the Premises from Greenbay pursuant to an agreement signed in November 2020 and effective in May 2021 (the "Lease"), for a period of five to ten years. ECF No. 29-1 at 1. The Lease imposes numerous contractual obligations on Greenbay, as the Lessor, to maintain the Premises in a safe and useable condition. The Lease generally provides that Greenbay "is responsible for the total maintenance and repair of the leased Premises, including the site and private access roads," *id.* § 6.09, along with maintenance of "the building, building systems, and all equipment, fixtures, and appurtenances furnished by the Lessor . . . in good repair and tenantable condition." *Id.* § 2.16; *see also id.* § 3.24 (requiring the Lessor to "provide and operate all Building equipment and systems in accordance with applicable technical publications, manuals, and standard procedures"); *id.* § 2.16 (requiring the Lessor to "maintain the Premises in a safe and healthful condition according to applicable OSHA standards").

Greenbay must also provide "initial supply and replacement of all supplies, materials, and equipment necessary for such maintenance." *Id.* § 6.09. The Lease further provides that Greenbay must retain an onsite building superintendent or local representative to address all deficiencies. *Id.* § 6.12. "[F]or the purpose of determining [Greenbay]'s compliance" with its contractual maintenance obligations, the Lease grants the Government the right "to inspect all areas of the Property to which access is necessary." *Id.*, General Clauses, § 12.

## II.  Procedural History

In September 2023, the Government moved to dismiss Plaintiff's FTCA claims for lack of subject matter jurisdiction, arguing that the United States had not waived its sovereign immunity with respect to Plaintiff's claims. ECF No. 29. Under the doctrine of sovereign immunity, the federal government cannot be sued in its capacity as a sovereign unless it consents to be sued. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). For the federal government to consent to be sued, Congress must waive sovereign immunity by explicitly extending to federal courts' subject-matter jurisdiction over a specified cause of action. *Id.*

The FTCA waives sovereign immunity and allows private individuals to sue the federal government for the torts of its employees by granting federal courts exclusive subject-matter jurisdiction over:

> civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). However, the FTCA contains a number of exceptions to this waiver of sovereign immunity, including the independent contractor and discretionary function exceptions at issue here. *See* 28 U.S.C. §§ 2674, 2680.

In January 2024, the Court issued an order denying the Government's motion without prejudice to refiling following limited jurisdictional discovery. *See* ECF No. 42. The Court agreed with the Government that the Lease clearly contemplated that Greenbay would fulfill the maintenance obligations identified in the contract independently and without VA supervision. *See id.* at 6 (explaining that there was "no evidence that the VA, in administering the Lease, controlled Greenbay's daily detailed performance of its maintenance obligations such that Greenbay or its

3

employees should be treated as government employees" and that the Government's retained right of inspection alone could not defeat the independent contractor exception).

Still, the Court acknowledged that "depending on how the accident occurred, the Government may have owed Mr. Cassidy additional duties under Texas common law based on its control of the Premises." *Id.* at 9. In Texas, a person put in control of a premises by the owner is under the same duty as the owner to keep the premises under his control in safe condition. *Smith v. Henger*, 226 S.W.2d 425, 431 (1950). Indeed, the Supreme Court of Texas has clarified that "we have never required exclusive control in the premises liability context. We have merely required 'sufficient control over the part of the premises that presented the alleged danger so that the defendant has the responsibility to remedy it.'" *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 479 (Tex. 2017) (quoting *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002)).[1]

As Plaintiff pointed out:

> [Greenbay]'s duty to maintain the premises in [tenantable] condition [and] to maintain the automatic doors "in good repair" does not deprive the United States of control over the premises or the dangerous condition at issue and would not relieve the United States of its duty to warn or make safe a known danger posed by the automatic doors which it might properly discharge by means other than repair/maintenance, e.g. posting a warning sign.

ECF No. 31 at 9. Thus, even assuming that the Lease conferred upon Greenbay the "exclusive" duty to maintain the Premises in good *repair*, the Government might still owe a duty to invitees "to warn about or make safe a known danger posed by the automatic doors" by, for example, installing a warning sign, removing a physical obstruction within its control, timely reporting the issue to Greenbay for repair, or shutting off the doors automatic function entirely. *Id.*

---

[1] *cf. Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993) ("[T]he court's inquiry must focus on who had specific control over the safety and security of the premises, rather than the more general right of control over operations. . . . If [the defendant] did not have any right to control the security of the station, it cannot have had any duty to provide the same.").

At the pleading stage, however, it was not clear whether the Government knew that the door was malfunctioning before Mr. Cassidy was injured or, indeed, as Plaintiff pointed out, "what exactly led to the malfunctioning of the automatic door, e.g. whether it was the failure of the internal component of the automatic door or some external cause squarely within the control of the United States (such as [a] physical obstruction in the walkway)[.]" *Id.* at 10.

Thus, the Court permitted Plaintiff to serve discovery requests on Greenbay bearing on the mechanism of Mr. Cassidy's injury and, by extension, the Government's immunity in this case, including discovery addressing:

  (1) whether the automatic door that injured Mr. Cassidy was used by the VA exclusively or shared by multiple tenants;

  (2) whether Greenbay was aware of a pre-existing defect or obstruction causing (or likely to cause) an automatic door malfunction when the accident occurred and, if so, how and when it learned of such defect/obstruction;

  (3) whether Greenbay, the Government, or any third-party to the litigation posted a warning near the relevant entrance (and the contents of any such warning);

  (4) how, when, and from whom Greenbay learned about Mr. Cassidy's accident;

  (5) communications between Greenbay and the VA concerning access to the relevant entrance, Mr. Cassidy's accident;

  (6) the results of any investigation of Mr. Cassidy's accident, performed by or provided to Greenbay;

  (7) the nature and status of any repairs/maintenance performed in the days/weeks before and after Mr. Cassidy's accident; and

  (8) the production of video footage of the incident, if any

ECF No. 42 at 11.

Based on Greenbay's responses to this jurisdictional discovery, the Court directed Plaintiff to file a supplement to the complaint identifying her theory of the Government's liability in this case. *Id.* at 12. The Court further observed that, to the extent that Plaintiff's claims are premised

on the Government's alleged duty to supervise Greenbay's performance under the Lease and duty to warn invitees about the door's known but latent defects, Plaintiff would need to identify mandatory regulations governing those duties to overcome the discretionary function exception to the FTCA's waiver of sovereign immunity. *See id.* at 9 n.3.

After three months of discovery, Plaintiff filed her Third Amended Complaint ("TAC"), adding two factual allegations:

> 6. At the time of the incident an employee of Defendant United States was in the immediate area and able to observe the functioning of the automatic door. Defendant United States' employee was in a position to warn Plaintiff and/or prevent the door from closing on Plaintiff but failed to do either.
>
> 7. Defendant United States, as lessee and sole occupier of the premises, had knowledge of the defective condition of the door prior to the incident but also failed to properly report the condition to the lessor/landlord San Antonio Greenbay for repair/remediation.

ECF No. 43 at 2.

Plaintiff did not attach any evidence gleaned through jurisdictional discovery to the TAC. Nor did she identify any mandatory regulations, policies, or procedures governing any United States employee's duty to warn Plaintiff or to supervise Greenbay's performance of its maintenance obligations under the Lease.

In May 2024, the Government again moved to dismiss Plaintiff's claims against it for lack of subject matter jurisdiction. ECF No. 44. For the reasons discussed herein, the Court **GRANTS** the motion, and Plaintiff's claims against the Government are dismissed without prejudice.

## DISCUSSION

### I. Legal Standard

The Government again seeks to dismiss this case for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure Rule 12(b)(1). Dismissal is proper under Rule 12(b)(1)

"when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Typically, in determining whether subject-matter jurisdiction exists, "[c]ourts must strictly construe all waivers of the federal government's sovereign immunity, [resolving] all ambiguities in favor of the sovereign." *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998). However, the Supreme Court has cautioned that "this principle is 'unhelpful' in the FTCA context, where 'unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute.'" *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 491–92 (2006) (quoting *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984)) (citations omitted). Thus, "the proper objective of a court attempting to construe one of the [exceptions to the FTCA's sweeping waiver of immunity] is to identify 'those circumstances which are within the words and reason of the exception'—no less and no more." *Id.*

In ruling on a motion under Rule 12(b)(1), the Court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *United States v. Freeman*, 556 F.3d 326, 334 (5th Cir. 2009). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). In short, no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* at 413.

Further, materials such as affidavits and regulations can be considered when relevant to the issue of jurisdiction. *Poindexter v. United States*, 777 F.2d 231 (5th Cir. 1985).

While the plaintiff bears the burden of showing an unequivocal waiver of sovereign immunity, it remains an open question which party retains the ultimate burden of proof on the applicability of the discretionary function exception. *St. Tammany Parish v. FEMA*, 556 F.3d 307, 315 n.3 (5th Cir. 2009). Regardless of which party bears the ultimate burden of proof, at the pleading stage, the plaintiff must allege a claim that is facially outside the exception. *Id.* At the summary judgment stage, the plaintiff must submit evidence that the claim is facially outside the exception. *Morales v. United States*, 371 F. App'x 528, 532 (5th Cir. 2010).

## II. Analysis

### A. Independent Contractor Exception to FTCA's Waiver of Sovereign Immunity

The FTCA waives immunity for claims based on the negligent or wrongful act or omission of any employee of the Government, while acting within the scope of his or her employment, under circumstances where the United States, if a private person, would be liable under state law. 28 U.S.C. § 1346(b).

The United States again asserts, based on the maintenance provisions of the Lease, that it delegated its duty to maintain the Premises to Greenbay and thus, that Plaintiff's claims fall within the independent contractor exception to the FTCA. In response, Plaintiff argues that, as the sole occupier of the Premises, the United States employees used the doors and *could have* posted signs and therefore it "retained such control over the subject door that it would have a duty to warn or take reasonable steps to make the condition safe . . . ." ECF No. 47 ¶ 45 (emphasis added). In other words, Plaintiff contends that, regardless of the terms of the Lease, the United States, as sole

occupier of the building, retained a non-delegable duty under Texas law to make the premises safe or warn of an allegedly dangerous condition.

The Fifth Circuit has held that state laws imposing non-delegable duties on the United States are preempted by the independent contractor's exception to the FTCA. *Jasper v. Fed. Emergency Mgmt. Agency*, 414 F. App'x 649, 652 (2011) (citing *Levrie v. Dep't of the Army*, 810 F2. 1311, 1314 (5th Cir. 1987) (per curiam) ("holding that the independent contractor 'exception to the waiver of sovereign immunity takes precedence over [state] law.'")).

While the Lease does appear to fully delegate the Government's premises liability duties under Texas law to Greenbay, the Court need not make this determination on these facts. The Court permitted Plaintiff to conduct jurisdictional discovery to determine whether, based on the manner in which Mr. Cassidy's injuries occurred, the Government owed a duty to him due to its *actual* control of the Premises, regardless of the provisions of the Lease. Plaintiff has failed to adduce any such evidence. Plaintiff's conclusory assertion that "[a]t the time of the incident an employee of the Defendant United States was in the immediate area and able to observe the functioning of the automatic door" and thus "was in a position to warn Plaintiff and/or prevent the door from closing on Plaintiff" is insufficient. ECF No. 43 ¶¶ 6–7.

In response to the Government's motion Plaintiff submitted (1) answers to interrogatories submitted to Greenbay (ECF No. 47-1), (2) responses to requests for admission served on Greenbay (ECF No. 47-2), and (3) a declaration executed by Plaintiff describing her account of the incident (ECF No. 47-3).

Greenbay's responses to Plaintiff's discovery requests establish that:

1. Greenbay did not have any employees on site at the time of the incident. ECF No. 47-1 at 4. The VA is the sole tenant of the Premises. *Id.* at 7. The VA may have had

   temperature checkers, as part of COVID-19 precautions, near the subject door who may have witnessed the incident. *Id.* at 4.

2. VA employees and/or contractors would open and close the doors to the subject building daily. If there had been any issues with a door, the Government should have reported it to this Greenbay. If any such report had been made, Greenbay would have contacted a third-party contractor to identify and remedy any alleged door issues. *Id.* at 5.

3. As the sole tenant, the VA could have posed warnings related to the subject doors if it had knowledge of potential defects, but Greenbay did not receive reports of and was not otherwise aware of any such defects or warning signs. *Id.* at 6–9.

4. At the time of the incident, the doors could be manually pushed open to the outside or a handicap button on the inside of the building near the door could have been pushed to automatically open the doors. If opened automatically, once fully opened, the doors would stay open for approximately 8 seconds before the automatic mechanism would release and allow the doors to close. *Id.* at 7.

5. Greenbay does not know how the incident occurred, was not aware of any pre-existing defect, obstruction, or any other issues related to the subject doors, has not taken any remedial measures with respect to the doors since the incident occurred, and did not learn about the incident until it received a letter from Plaintiff's counsel dated September 22, 2022. *Id.* at 5–8.

According to her declaration, Plaintiff did not observe the circumstances under which Mr. Cassidy initially came into contact with the door. She left him at the entrance of the building to retrieve her car from the parking lot. ECF No. 47-3 ¶ 6. She moved her car and, when she returned to the top of the ramp at the entrance of the building to retrieve her father, saw that Mr. Cassidy had been caught by the automatic door. *Id.* After Mr. Cassidy fell, "a woman appeared immediately to aid [Mr. Cassidy] and told [Plaintiff] to dial 911." *Id.*

Plaintiff assumes—from the fact that the woman was wearing scrubs or a medical uniform—that she was a VA employee (and not, e.g., a VA contractor or another patient's personal caregiver). *Id.* ¶ 7. She further assumes that, based on the woman's proximity to Mr. Cassidy, that she was in a position to prevent the automatic doors from closing on him and failed to do so. *Id.* As the Government points out:

10

> The fact that this unknown woman didn't appear until after Mr. Cassidy had fallen could explain several more likely scenarios. It could mean that, like Plaintiff, she did not see Mr. Cassidy until after he had fallen and then leapt to help him, or perhaps she was rushing to the door to do exactly what Plaintiff suggest[ed] she should have done, attempt to stop the doors from closing on Mr. Cassidy, but unfortunately arrived too late. Or it could mean that she was walking toward the door reasonabl[y] focused on some other activity rather than on Mr. Cassidy standing by the door.

ECF No. 48 at 5.

In a factual attack on a court's subject matter jurisdiction, no presumptive truthfulness attaches to a plaintiff's allegations and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson*, 645 F.2d at 413. Nothing in the TAC or Plaintiff's response to the Government's motion plausibly establishes a basis to infer that (1) the unidentified person in the vicinity was a Government employee, (2) he or she—or any Government employee—was aware of the malfunction, or (3) he or she—or any Government employee—had the ability to prevent Mr. Cassidy's injuries. There is no evidence that, based on its actual control of the premises, the Government owed a duty to Mr. Cassidy independent of the maintenance duties delegated to Greenbay in the Lease.

Accordingly, the Court concludes that Plaintiff's claims against the Government are barred by the independent contractor exception to the FTCA.

### B. Discretionary Function Exception to FTCA's Waiver of Sovereign Immunity

Plaintiff's claims against the Government are also barred by the discretionary function exception, which provides that the Government's waiver of sovereign immunity under the FTCA does not extend to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

To determine whether the exception applies, a court must first ask whether the challenged actions were discretionary, or whether they were instead controlled by mandatory statutes or regulations—in other words, whether the conduct is a "matter of choice for the acting employee." *St. Tammany Parish v. FEMA*, 556 F.3d 307, 323 (5th Cir. 2009) (citing *Berkovitz v. United States*, 486 U.S. 531 (1988)). If the conduct involves such discretion, the court must determine whether it is the kind of judgment that the discretionary function exception was designed to shield. *Id.* The exception was designed to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy and thus protects only governmental actions and decisions based on considerations of public policy. *Id.* at 323–24. At the pleading stage, a plaintiff must allege a claim that is facially outside the exception. *Id.* at 315 n.3.

Despite the warning in the Court's previous order, *see* ECF No. 42 at 9 n.3, Plaintiff has not identified any controlling statute, regulation, or policy governing the supervision of Greenbay's maintenance duties or the Government's duties to warn invitees about latent defects in the Premises. Moreover, courts have found that such duties involve the kind of judgment the discretionary function exception was intended to protect. *See, e.g.*, *Guile v. United States*, 422 F.3d 221, 230 (5th Cir. 2005) ("Supervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function."); *Kiehn v. United States*, 984 F.2d 1100, 1103 (10th Cir. 1993) (stating in a failure to warn claim that "[t]he decision whether or not to post warning signs . . . is clearly discretionary as it 'involves an element of judgment or choice.' "); *see also Lesoeur*, 21 F.3d at 969–70 (rejecting plaintiff's contention in a failure to warn context that the failure of the United States to post warning signs did not fall outside the scope of the discretionary function exception); *Williams v. United States*, 50 F.3d 299, 310 (4th Cir. 1995)

("With respect to posting ["wet floor"] warning signs in this specific case, the courts recognize that this falls within the purview of the discretionary function exception.").

Plaintiff has failed to allege a claim that is facially outside the discretionary function exception, and her claims against the United States must be dismissed for lack of subject matter jurisdiction. *St. Tammany Parish*, 556 F.3d at 315 n.3.

## CONCLUSION

For the reasons stated herein, the Government's motion to dismiss Plaintiff's FTCA claims for lack of subject matter jurisdiction (ECF No. 44) is **GRANTED**.

The Court declines to exercise supplemental jurisdiction over the state-law claims against Greenbay. 28 U.S.C. § 1367(c)(3). Accordingly, this action is **DISMISSED WITHOUT PREJUDICE**. A final judgment shall issue in accordance with Rule 58.

Nothing prevents Plaintiff from pursuing her claims against Greenbay in state court. *See Artis v. District of Columbia*, 138 S. Ct. 594 (2018) (holding that § 1367(d) tolls the statute of limitation on state-law claims during the pendency of a federal action in which the court dismissed all federal claims and declines to exercise supplemental jurisdiction over the state-law claims).

The Clerk is **DIRECTED** to **CLOSE** this case.

It is so **ORDERED**.

**SIGNED** this 25th day of October, 2024.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE